# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ANTHONY LAMAR SIMMONS,

      Petitioner,

v.                                  Case No. 3:22-cv-938-TJC-SJH

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

## I.   Status

Petitioner, an inmate of the Florida penal system, initiated this case through counsel by filing a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1). He is proceeding on an Amended Petition (Doc. 3), in which he challenges a state court (Duval County, Florida) judgment of conviction for two counts of attempted second degree murder and four counts of attempted robbery with a deadly weapon. He is serving a forty-year prison sentence. Respondents

filed an Answer to Amended Petition (Doc. 6) with exhibits (Docs. 6-1 to 6-24).[1]

Petitioner filed a counseled Reply (Doc. 9). This case is ripe for review.[2]

## II.  **Governing Legal Principles**

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See

---

[1] The Court cites to the document and page numbers as assigned by the Court's electronic case filing system.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted on any ground.

Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The

state court need not issue an opinion explaining its rationale for the state court's

decision to qualify as an adjudication on the merits. See Harrington v. Richter,

562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is

unaccompanied by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that does
> provide a relevant rationale. It should then presume that the
> unexplained decision adopted the same reasoning. But the
> State may rebut the presumption by showing that the
> unexplained affirmance relied or most likely did rely on
> different grounds than the lower state court's decision, such
> as alternative grounds for affirmance that were briefed or
> argued to the state supreme court or obvious in the record it
> reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that state-

3

court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear

> because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, 501 U.S. at 747-48; Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such

evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.  **Trial Proceedings**

On direct appeal, Florida's First District Court of Appeal summarized the facts and trial proceedings as follows:

> Six people went out to a restaurant to sing karaoke and celebrate a birthday. After the restaurant closed, they remained outside for an hour or longer, talking and laughing about the weekend.
>
> Appellant, identified in court by four witnesses, approached the restaurant and checked the door to see if the business was closed. Appellant then walked a few feet toward the group, told them his car was out of gas, and asked for money to help. One member of the group immediately offered to take care of the car for Appellant. Declining that assistance, Appellant accepted $2.00 from another person and walked away a few feet, but then turned to the group again, his hand fumbling in his pocket, and irately asked why the victims had given him so little money. Appellant pulled out a handgun and told the group he would shoot anyone who attempted to leave, and demanded their wallets and money.
>
> One member of the group stood up and stepped toward Appellant, and Appellant immediately shot the victim in the chest. The bullet entered the victim's lower torso, exited, and then entered the second victim's face. The first victim testified that he tried to run after Appellant but found that he couldn't breathe, and looked at his chest to find a hole in his body. The second victim testified that his face started shaking and his body "slumped" to the left, and he could not move. The bullet lodged permanently in that victim's neck.
>
> Appellant's girlfriend testified that Appellant, whom she met on Facebook, was known as "Amp." When a local televised news report posted pictures of

the suspect from restaurant surveillance video, Appellant admitted to her that the picture depicted him.

The State introduced a photograph of Appellant with a handgun, which was posted to Facebook near the date of the crimes and matched the victims' descriptions of the perpetrator. The State noted that the gun in the photograph was consistent with the .40-caliber Smith & Wesson semi-automatic pistol seized from the apartment Appellant shared with his girlfriend. The State presented evidence that Appellant's DNA was found on the magazine of that firearm.

After law enforcement obtained sufficient evidence to secure an arrest warrant, several officers attempted to arrest Appellant as he arrived at his girlfriend's apartment. The officers used three cars to attempt to block the egress route of the car in which Appellant arrived. Appellant jumped into the driver's seat and drove into a parked car and then directly into an officer's car, and continued until he reached a dead end. Appellant then drove into a dumpster, and one officer rammed his car. Appellant leapt out of the car and was hit by another vehicle, but quickly jumped up and attempted to run away. Appellant was then tackled by several officers and arrested.

The State presented the similar-fact testimony of a witness who was robbed by Appellant two nights earlier, at a restaurant less than a mile away from the location of the charged crimes. The trial court informed the jury of the limited purpose of the evidence, noting that "the defendant cannot be convicted for a crime, wrong or act that is not included in the Information."

The similar-fact witness testified that she and friends arrived at the restaurant near 2:45 a.m. She did not know Appellant, who was standing outside the

11

restaurant, but she asked him to use her phone to take a picture of her and two friends. The witness and her friends then went into the restaurant. When the witness left the restaurant alone 15 minutes later, Appellant approached her and asked for a cigarette lighter. She went to her car and looked for a lighter, then turned to tell Appellant she did not have one, and saw that Appellant was pointing a handgun at her. Appellant demanded her clothing, which contained her wallet and cell phone, and then returned her driver's license after wiping it off with his shirt. The witness testified that she drove home in her undergarments. The witness further testified that Appellant had on a white tank-top, which was a similar shirt to the one described by the witnesses to the charged crime. The witness also testified that Appellant was in a car similar to the car shown in the surveillance video on the televised news report. Shortly after the robbery, the witness identified Appellant from a photographic line-up, and she positively identified him at trial.

Appellant testified in his own defense, stating that on the night of the charged crimes he told the victims he needed money for gas, and they gave him money in exchange for marijuana. After noticing he had been short-changed, he returned to them, when the first shooting victim pulled a knife and threatened Appellant, and then chased him. Appellant testified that he fell and got back up, but his pants were baggy and needed to be pulled up; while he was pulling up his pants, his gun went off accidently. He further testified that he fled the attempted arrest because he thought he was being assaulted, as the officers were in unmarked cars. Appellant denied any involvement in the prior robbery.

After the defense rested, the State called the victims of the charged case, who testified on rebuttal that they never bought drugs from Appellant and no one attacked Appellant with a knife. The State also

called the arresting officer, who testified that Appellant, after being read his rights, told police he did not own a gun and he was never at the restaurant that night.

During closing argument, the State told the jury that Appellant's story about being attacked by the victim was "made up – made up for the first time three years and one month later." Defense counsel objected, which was overruled. The State made several similar remarks attacking Appellant's credibility and veracity. Defense counsel did not object to these statements. The State also argued that the discharge of the firearm "doesn't have to be accidental, it doesn't have to be intentional, it's the fact that [Appellant] was the person with the firearm, he is the one that discharged it."

Appellant was found guilty on all counts. At sentencing, the victim who had been shot in the face testified to the pain and suffering he continued to endure, urging the court to sentence Appellant to life imprisonment. Another victim testified to the extreme mental anguish she experienced after the crime. The court sentenced Appellant to forty years in prison on one count of attempted second-degree murder and twenty-five concurrent years in prison on all other counts, based on a jury finding that Appellant discharged a firearm during the offenses causing great bodily harm.

Simmons v. State, 257 So. 3d 1121, 1125-26 (Fla. 1st DCA 2018).

## IV.  Analysis

### A. Ground One

Petitioner argues that his trial counsel was ineffective when she failed to file a pretrial motion seeking immunity under Florida's stand your ground law.

13

See Doc. 3 at 18. He contends that one of the victims, Garry Lee, pulled out a switchblade and "attacked" him, and "while trying to run away from Lee, [Petitioner] fired back at Lee." Id. He contends that his version of events is supported by the pretrial deposition testimony of Michael Brown and Kimberly Jordan. See id. at 18-19. Thus, according to Petitioner, his counsel was deficient for failing to file a pretrial motion to dismiss, and he was prejudiced when he was convicted at trial of two counts of attempted second degree murder. Id. at 19.

Petitioner raised this claim in his pro se postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. The trial court[3] summarily denied the claim:

> In Ground Four, Defendant alleges counsel was ineffective for failing to file a pretrial motion seeking immunity pursuant to section 776.032(1), Florida Statutes. After reviewing the record, this Court finds no reasonable probability that the trial judge would have granted a motion filed pursuant to section 776.012(1).[FN]
>
>> [FN]When the Defendant testifies at trial, the Court can most certainly evaluate the record to determine whether the Defendant has demonstrated prejudice from a failure to file a motion to dismiss on STYG immunity. To the extent that the Third District Court of Appeal, in Bradshaw v. State, 2020 WL 912083 (Fla. 2020), has suggested an evidentiary hearing is required, this case is distinguishable because in

---

[3] The judge who denied the Rule 3.850 motion was not the trial judge.

<u>Bradshaw</u> the Defendant did not testify even though he asserted a claim of self-defense. In this case, the Defendant did testify and as such, this Court can examine the ROT to determine whether there is a reasonable probability, had counsel filed a motion to dismiss under Florida's STYG law, the trial court would have granted the motion.

In reaching this conclusion, this Court finds analogous cases in which counsel fails to timely file a motion for new trial. For example, in <u>Robinson v. State</u> the trial court granted an untimely motion for new trial, but the appellate court reversed . . . for lack of jurisdiction. 462 So. 2d 471, 475-78 (Fla. 1st DCA 1984). The trial court then entered a final judgment, and the defendant appealed. <u>Id.</u> On this second appeal, the appellate court found that counsel's failure to timely file a motion for new trial deprived the defendant "of all judicial review of evidentiary weight." <u>Id.</u> at 477. And, because the trial court had granted the untimely motion, it was clear that a timely motion would have been granted. <u>Id.</u> at 477-78. Relying upon <u>Robinson</u>, subsequent appellate decisions have similarly held that a defendant can demonstrate prejudice under <u>Strickland</u> by pointing to evidence within the record that a motion for new [trial] would have been granted had it been filed. <u>E.g.</u>, <u>Lamb v. State</u>, 124 So. 3d 953, 957 (Fla. 2d DCA 2013); <u>State v. Bodden</u>, 756 So. 2d 1111, 1113 (Fla. 3d DCA 2000). However, the First District Court of Appeal has made clear that counsel's failure to file a motion for new trial does not constitute <u>per</u> <u>se</u> ineffective assistance of counsel. <u>Williams v. State</u>, 553 So. 2d 309, 309 (Fla. 1st DCA 1989).

If counsel's failure to seek judicial review of the evidence post trial is not <u>per</u> <u>se</u> ineffective, then counsel's failure to do the same before trial cannot be <u>per</u> <u>se</u> ineffective. Instead, a defendant must point to some record evidence showing that the motion probably would have been granted had it been filed. In Defendant's case, this means he must demonstrate a reasonable probability that the trial judge would have found by a preponderance of the evidence

that he acted in self-defense when he shot the victims.[FN] This Court's finding is supported by the few appellate decisions addressing counsel's failure to file a pretrial motion pursuant to section 776.012(1), wherein the courts have held that such a claim may be summarily denied by the attachment of portions of the record conclusively refuting the claim. See Waters v. State, 267 So. 3d 538, 541 (Fla. 1st DCA 2019); but see Bradshaw v. State, 45 Fla. L. Weekly D439 (Fla. 3d DCA Feb[.] 26, 2020) (reversing and remanding for an evidentiary hearing on defendant's 3.850 motion without addressing the prejudice prong of Strickland).

> [FN] Defendant's trial began on August 29, 2016. The jury rendered its verdict on September 1, 2016. This Court sentenced Defendant on October 19, 2016. He filed his notice of appeal on November 15, 2016. Thus, had counsel moved for a pretrial hearing, Defendant would have had the burden of establishing entitlement to immunity by a preponderance of the evidence. See Bretherick v. State, 170 So. 3d 766, 775 (Fla. 2015); see also Commander v. State, 246 So. 3d 1303, 1303-04 (Fla. 1st DCA 2018).

In addition to the eyewitness testimony given by the victims, the State presented evidence that Defendant fled when police first made contact with him. After officers surrounded his vehicle, Defendant jumped into the driver's seat and drove away. He rammed his vehicle into a parked car and a police truck, drove to a dead end, and tried to flee on foot. The State also presented evidence that Defendant had committed another robbery in a restaurant parking lot days before the robbery in the instant case. Like the victims in the instant case, Defendant approached the victim, asked her for something, and then pulled out a gun when the victim refused. The victim in that case recognized Defendant's vehicle from a news report about the instant case, and she identified Defendant when shown a photographic lineup.

Defendant testified on his own behalf. By his version of events, he was driving to see a friend when he ran out of gas. He stayed with his vehicle for a while and asked if anyone had money to help him out, but everyone declined. Because he was on a busy street, he decided to start walking and see if he could find anyone who would help him. He saw a group of people outside of a restaurant and asked them for money. They were noncommittal/nonchalant in their responses, but they seemed like nice people, so he tried to start a conversation with them. One of the women told him that she was waiting on someone to bring her marijuana. This was fortuitous, because Defendant had his personal stash with him. He agreed to sell her some for ten dollars, but she only gave him seven. When he realized the mistake, he returned to the group, but the woman was gone. He talked with two men who were sitting down, and asked them to get her to come back because she owed him three dollars. The conversation became confrontational, and one of the men pulled out a pocketknife. The man was much larger than Defendant, and he attacked Defendant with the knife. Defendant fell to the ground, and the man continued to poke him with the knife. Defendant started to run, the man chased him, and Defendant shot him. When interviewed by detectives, Defendant denied any involvement in the robbery and did not mention the attack.

On rebuttal, the victims categorically denied Defendant's version of events. The detective who interviewed Defendant reiterated that Defendant had never discussed the stabbing and/or drug deal with him. Defendant's version of events was also inconsistent with the testimony of an eyewitness who observed the shooting from a distance.

The State[] presented a compelling case against Defendant, but—with the exception of his own self-serving testimony at trial—no evidence supported Defendant's claim of self-defense. Certainly, the jury rejected it. Accordingly, this Court finds no reasonable probability that a pretrial motion for immunity filed pursuant to section 776.012(1) would have been granted. As such, counsel is not ineffective

for failing to file a meritless motion. The Defendant is not entitled to relief on Ground Four.

Doc. 6-12 at 117-20 (internal record citations omitted).

Petitioner, through counsel, appealed the trial court's denial of this claim. In his initial brief on appeal, he raised one argument: "A successor judge who did not preside over the trial of a criminal case cannot deny a 3.850 claim of ineffective assistance of counsel for failing to file a pretrial stand your ground motion by weighing the evidence from a cold record when the issue comes down to the credibility of the defendant's testimony at trial; the trial court erred therefore in summarily denying the claim without an evidentiary hearing." Doc. 6-14 at 11 (capitalization and emphasis omitted). The First DCA affirmed the trial court's decision and issued a written opinion:

> Anthony Lamar Simmons appeals a trial court order denying his motion for postconviction relief. Simmons argued below and now on appeal that his trial counsel was ineffective for failing to file a pretrial motion seeking immunity under Florida's Stand-Your-Ground law, codified at section 776.032, Florida Statutes. Simmons claims that had this pretrial motion been filed, there is a reasonable probability that it would have been granted and he would have been immune from prosecution. We disagree.

> Simmons was convicted by a jury of two counts of attempted second-degree murder and four counts of attempted armed robbery. <u>Simmons v. State</u>, 257 So. 3d 1121, 1125 (Fla. 1st DCA 2018). The jury in his case was instructed on the defense of justifiable use of deadly force on the two attempted second-degree

murder charges. Specifically, the jury instructions stated in relevant part

> If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you should find the defendant not guilty.

> However, if from the evidence you are convinced beyond a reasonable doubt that the defendant was not justified in the use of deadly force, you should find him guilty if all the elements of the charge have been proved.

This instruction is the standard jury instruction. Fla. Std. Jury Instr. (Crim.) 3.6(f). The jury at Simmons' trial rejected this defense and found him guilty.

In Boston v. State, 296 So. 3d 580 (Fla. 1st DCA 2020), the trial court applied the wrong burden at Boston's Stand-Your-Ground hearing but a jury later rejected his claim of self-defense and found him guilty beyond a reasonable doubt. We held that "a trial court's error in applying the correct burden at the immunity hearing can be cured if the State establishes the defendant's guilt at trial by proof beyond a reasonable doubt." Id. at 583. The Florida Supreme Court reviewed Boston v. State and approved our holding. 326 So. 3d 673 (Fla. 2021). To hold otherwise "would violate the statutory prohibition on reversing a judgment in the absence of error 'that injuriously affected the substantial rights of the appellant.'" Id. at 678 (quoting § 924.33, Fla. Stat. (2021)).

In postconviction claims of ineffective assistance of trial counsel, Strickland v. Washington supplies a different but similar prejudice standard. "The defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). When a jury rejects a claim of self-defense at trial <u>beyond a reasonable doubt</u>, there is no reasonable probability that a trial judge would have rendered a different judgment at a Stand-Your-Ground hearing with a lower standard of proof. The conviction beyond a reasonable doubt precludes a finding of prejudice under <u>Strickland</u>. Because Simmons was convicted at trial, his claim fails as a matter of law.

Doc. 6-17; <u>Simmons v. State</u>, 337 So. 3d 470, 470-71 (Fla. 1st DCA 2022).

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications.[4] Although Ground One presents an ineffective assistance of trial counsel claim, the underlying question is whether the trial court would have granted a pretrial motion to dismiss had trial counsel filed one. This question is a matter of state law, which was decided by the First DCA. The First DCA's decision is supported by the record, and this Court must defer to the state court's determination on this state law issue. <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (recognizing that the United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); <u>Pinkney</u>

---

[4] Respondents argue this claim is unexhausted but the Court disagrees. The First DCA's opinion clearly reflects that it considered the claim as an ineffective assistance of counsel claim.

v. Sec'y, DOC, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension, [courts] must defer to the state's construction of its own law when the validity of the claim that appellate counsel failed to raise turns on state law." (internal quotation marks and citation omitted)). As the state court noted, the jury found Petitioner guilty under the higher beyond a reasonable doubt standard. Thus, it is unlikely that the state court would have granted a pretrial motion to dismiss under the lower preponderance of the evidence standard. As such, Petitioner fails to show prejudice.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to federal habeas relief on Ground One.

## B. Ground Two

Petitioner argues that his trial counsel was ineffective for failing to impeach Garry Lee, one of the victims, "with a printout of his Facebook page which directly contradicted his trial testimony that he had not shared a picture of [Petitioner]." Doc. 3 at 20 (emphasis omitted). He argues that had counsel

impeached Lee as he suggests, "there is a reasonable probability that the jury would have questioned Lee's version of events since he was willing to lie about something so trivial, and found [Petitioner] not guilty." Id.

Petitioner acknowledges that he did not exhaust this claim, but he argues that the exception outlined in Martinez excuses his procedural default. In Martinez, the Supreme Court recognized a narrow exception to the rule that an attorney's error, or lack of an attorney, in a postconviction proceeding does not constitute cause for a procedural default:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 17. To establish cause under Martinez, Petitioner must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." Id. at 14; see also Lambrix v. Sec'y Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is not substantial if it lacks merit or is wholly without factual support. See Martinez, 566 U.S. at 15-16.

At trial, Lee testified that on August 8, 2013, four days after the incident, he identified Petitioner in a photo line-up. Doc. 6-4 at 488-90. On cross-examination, Petitioner's counsel asked Lee whether he had shared a

photograph of Petitioner on Facebook. <u>Id.</u> at 519. Lee responded, "No, I did not." <u>Id.</u> Counsel then asked, "So on August 14th, you didn't share a photograph of . . . [Petitioner] being arrested - - or I guess a record of [Petitioner] being arrested for this offense?" <u>Id.</u> Lee responded, "No, I don't recall that, no." <u>Id.</u> at 520. At that time, the state objected and asked for a sidebar. <u>Id.</u> During the sidebar conversation, the state advised that it had not been provided with any Facebook printouts although it observed some in defense counsel's possession during cross-examination. <u>Id.</u> The state requested a <u>Richardson</u>[5] hearing if defense counsel was going to ask anything further of Lee regarding his Facebook posts. <u>Id.</u> Defense counsel advised that she "discovered it last night, but [she was] not going to ask him any further questions about it." <u>Id.</u>

Petitioner also testified at trial. He acknowledged during his trial testimony that he was the individual who shot the victims, but he claimed—for the first time—to have done so in self-defense. So, the issue of Petitioner's identity was not contested at trial. Even if counsel had impeached Lee in the manner Petitioner suggests, he fails to show a reasonable probability that the outcome of the trial would have been different. Petitioner's argument to the contrary is entirely speculative[6] and ignores the remainder of the state's

---

[5] <u>Richardson v. State</u>, 246 So. 2d 771 (Fla. 1971).

[6] Petitioner argues that "Lee's willingness to lie about something as trivial as posting on Facebook, could well have been the deciding factor for the jury in determining credibility." Doc. 9 at 7.

evidence against him. At trial, Detective Bear testified that he interviewed Petitioner after the incident. Doc. 6-4 at 1238-39. Detective Bear explained that Petitioner denied being at Applebee's, denied owning or possessing a firearm, and did not say that he had been stabbed by Lee. Id. at 1241, 1246, 1250. Kimberly Jordan, one of the eyewitnesses who was in Lee's group of friends, testified that no one in their group had any type of weapon, and she did not see Lee with a pocketknife or observe Lee "charge after [Petitioner] with a pocketknife." Doc. 6-4 at 1235-36. Jared Jordan, an eyewitness who was not part of Lee's group of friends, testified that he was also at Applebee's that evening, and he witnessed the shooting. See id. at 724-54. He heard Petitioner ask Lee's group of friends whether Applebee's was closed and if they had any change. Id. at 729, 749. He testified that Petitioner was "directly in front of" Lee's group of friends, facing them with his arm extended towards them when Jordan heard gunshots. Id. at 733-35. Further, contrary to Petitioner's testimony that he was shorted on a drug deal, Charaine Robinson testified that she does not use drugs, and she never had a conversation about drugs with Petitioner. Id. at 1230-32. Johnson also testified that no one in their group discussed drugs with Petitioner. Id. at 1234-35.

Considering the evidence presented, there is no reasonable probability of a different outcome had counsel impeached Lee with his Facebook post. Because this claim is not substantial, Martinez does not apply to excuse Petitioner's

procedural default. Petitioner has not otherwise shown cause for and prejudice from his procedural default or demonstrated that a fundamental miscarriage of justice will result if the Court does not consider this claim on the merits. As such, Ground Two is due to be denied.

## C. Ground Three

Petitioner claims that his trial counsel was ineffective by failing "to object to the prosecutor's misstatement of the law when she incorrectly advised the jury that [Petitioner] should be convicted even if they believed that the discharge of the firearm was an accident." Doc. 3 at 21 (emphasis omitted). According to Petitioner, "had [his] counsel objected and the trial court clarified the applicable law, there is a reasonable probability that [Petitioner] would not have been found guilty of attempted second degree murder." Id.

Petitioner raised this claim as ground six in his Rule 3.850 motion. The trial court summarily denied the claim, explaining that "[a]fter reviewing the State's arguments, this Court finds that they were a fair comment on the evidence. Accordingly, Defendant is not entitled to relief on Ground[] . . . Six." Doc. 6-12 at 121.

Petitioner appealed. Because the trial court did not hold an evidentiary hearing, Petitioner was not required to file an initial brief. See Fla. R. App. P. 9.141(b)(2)(C)(i) (following a summary grant or denial of all claims raised in a motion without an evidentiary hearing, an appellant is not required to file an

initial brief). Nevertheless, Petitioner, through counsel, filed an initial brief but failed to address this claim. Because this claim was not included in the initial brief, Petitioner acknowledges that this claim is not exhausted and procedurally barred. See Doc. 3 at 22.[7] But he asks this Court to apply the Martinez exception to excuse his procedural default. Id.

The limited exception in Martinez applies only "where (1) a state requires a prisoner to raise ineffective-trial-counsel claims at an initial-review collateral proceeding; (2) the prisoner failed properly to raise ineffective-trial-counsel claims in his state initial-review collateral proceeding; (3) the prisoner did not have collateral counsel or his counsel was ineffective; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a 'substantial' ineffective-trial-counsel claim." Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1260 (11th Cir. 2014) (emphasis added). Importantly, Martinez "does not concern attorney errors in other kinds of proceedings, including appeals from

---

[7] There are two unpublished Eleventh Circuit cases finding that a petitioner who chooses to file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief. See Cortes v. Gladish, 216 F. App'x 897 (11th Cir. 2007); Darity v. Sec'y, Dep't of Corr., 244 F. App'x 982, 984 (11th Cir. 2007). But both of those cases rely on Webb v. State, 757 So. 2d 608 (Fla. 5th DCA 2000), from which the Fifth DCA has since receded. See Ward v. State, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (explicitly receding from Webb and finding issues not raised in an appellant's brief following a summary denial of a postconviction motion were abandoned); see also Hastings v. State, 388 So. 3d 1145, 1147 (Fla. 5th DCA 2024) (affirming summary denial of a ground because the appellant "did not address it at all in her brief"). Thus, the Court does not find the Eleventh Circuit's unpublished cases to be persuasive and agrees with the parties that this claim is unexhausted.

initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." Id. (emphasis added; internal quotations and citation omitted). Here, Petitioner's claim is defaulted because although he raised the claim in his pro se Rule 3.850 motion, his counsel did not raise the claim in his 3.850 appeal. And "the Supreme Court has explicitly held that attorney errors made in appeals from initial-review collateral proceedings do not constitute cause excusing a procedural default." Baker v. Dep't of Corr., Sec'y, 634 F. App'x 689, 694 (11th Cir. 2015). Thus, Martinez does not apply.

Regardless, even if Martinez did apply, the underlying ineffective assistance of counsel claim is not substantial. "The statements of a prosecutor will justify reversal of a conviction if they undermined the fairness of the trial and contributed to a miscarriage of justice. Furthermore, a prosecutor's statements during closing argument require reversal only if the comments are both improper and prejudicial to a substantial right of the defendant." United States v. Jacoby, 955 F.2d 1527, 1541 (11th Cir. 1992) (internal quotations and citations omitted). Notably, on direct appeal, Petitioner argued that it was legally inaccurate for the prosecutor to tell "the jury that even if the jury found that [Petitioner's] discharge of the gun was not intentional, they should find that [Petitioner] discharged a firearm causing great bodily harm." Doc. 6-5 at 50. The First DCA found as follows:

27

[Petitioner] also argues that, during closing argument, the State misstated the law by incorrectly informing the jury that [Petitioner] could be convicted even if the jury believed the discharge of the firearm was an accident. Where a prosecutor misstates the law during closing argument, and the defendant does not object or move for mistrial, the issue is not preserved for appellate review unless the comment rises to fundamental error, such that a conviction could not have been obtained without the error. See, e.g., Evans v. State, 177 So. 3d 1219, 1234 (Fla. 2015); State v. Fountain, 930 So. 2d 865, 866 (Fla. 2d DCA 2006).

During closing arguments, the State told the jury that the discharge of the firearm "doesn't have to be intentional, it's the fact that [Petitioner] was the person with the firearm, he is the one that discharged it." [Petitioner] neither objected nor moved for mistrial; thus, absent fundamental error, the issue is waived. Evans, 177 So. 3d at 1234. Regardless, we do not view the State's comment as a misstatement of law, let alone fundamental error. The State argued that intent was not required for the aggravating factor of discharging a firearm. The State had already explained how to find second-degree murder, and prefaced the challenged comment with "So, if you find [Petitioner attempted to] commit[ ] murder in the second degree . . . ." (Emphasis added.) Thus, no fundamental error occurred.

Simmons, 257 So. 3d at 1129-30; see Doc. 6-8 at 10.

Thus, the First DCA ruled on the underlying issue—whether the prosecutor's comment was improper—finding that the comment was not "a misstatement of law." Regardless, the jury was repeatedly instructed that what the lawyers say is not evidence, the judge would instruct it on the law, and it was required to base its verdicts solely on the evidence presented during the

trial. See Doc. 6-4 at 264-65, 1300, 1405, 1406-07. Notably, jurors are presumed to follow a court's instructions on the law. See Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001); see also United States v. Almanzar, 634 F.3d 1214, 1222 (11th Cir. 2011).

Considering the record, the Court finds that the state's comment during closing argument did not render Petitioner's trial fundamentally unfair, or "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). Thus, Petitioner fails to show either deficient performance or resulting prejudice, which means his instant ineffective assistance of counsel claim is insubstantial. Because this claim is not substantial, Martinez, assuming it applies in this situation, does not excuse Petitioner's procedural default. Petitioner has not otherwise shown cause for and prejudice from his procedural default or demonstrated that a fundamental miscarriage of justice will result if the Court does not consider this claim on the merits. As such, Ground Three is due to be denied.

**D. Ground Four**

Petitioner claims that his trial counsel was ineffective by failing "to object to the prosecutor's misstatement of the burden of proof attached to a finding that [Petitioner] acted in self-defense." Doc. 3 at 22 (emphasis omitted). Petitioner specifically takes issue with the following statement made by the prosecutor during closing argument: "So, obviously, in order to find a justifiable

attempted homicide, you all would have to believe unanimously that the defendant was the one being attacked by Garry Lee with that pocketknife in order to find that the defendant's actions, the firing of the gun, was justifiable." Id.

Petitioner raised this claim as ground seven in his Rule 3.850 motion. The trial court summarily denied the claim, explaining that "[a]fter reviewing the State's arguments, this Court finds that they were a fair comment on the evidence. Accordingly, Defendant is not entitled to relief on Ground[] . . . Seven." Doc. 6-12 at 121.

Petitioner appealed, but as with Ground Three above, he failed to address this claim in his initial brief. Petitioner acknowledges that this claim is not exhausted and procedurally barred. See Doc. 3 at 23. But he asks this Court to apply the Martinez exception to excuse his procedural default. Id.

For the same reasons as stated in Ground Three above, Martinez does not apply in this situation. Nevertheless, assuming it does, the Court finds the underlying ineffective assistance of counsel claim is not substantial.

On direct appeal, Petitioner argued the prosecutor's statements were a misstatement of the burden of proof. See Doc. 6-5 at 52. The First DCA found as follows:

> Next, [Petitioner] claims that the State improperly shifted the burden of proof on his self-defense claim. When a defendant raises a self-defense

claim, he must produce enough evidence to establish a prima facie case of justifiable use of force. <u>Fields v. State</u>, 988 So. 2d 1185, 1188 (Fla. 5th DCA 2008). Once a defendant makes this showing, the State has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. <u>Id.</u> Where a defendant does not object to a comment that shifts the burden of proof, the claim is waived on appeal. <u>Morrison v. State</u>, 818 So. 2d 432, 445 (Fla. 2002).

Here, the State told the jury that "in order to find a justifiable attempted homicide, you all would have to believe unanimously that [Petitioner] was the one being attacked by [the victim] with that pocketknife in order to find that [Petitioner's] actions, the firing of the gun, was justifiable." As [Petitioner] did not object or move for mistrial, this claim is not preserved for appeal. <u>See id.</u> Moreover, this comment did not shift the burden of proof. <u>See Fields</u>, 988 So. 2d at 1188. Shortly after making the comment, the State told the jury that if, "in your consideration of the issue of self-defense, you have reasonable doubt on the question of whether [Petitioner] was justified in the use of deadly force, you should find [Petitioner] <u>not guilty</u>." (Emphasis added.) Thus, [Petitioner] fails to show any fundamental error.

<u>Simmons</u>, 257 So. 3d at 1130; <u>see</u> Doc. 6-8 at 10-11.

The First DCA explicitly found that the prosecutor's "comment did not shift the burden of proof." Again, the jury was repeatedly instructed that what the lawyers say is not evidence, the judge would instruct it on the law, and it was required to base its verdicts solely on the evidence presented during the trial. <u>See</u> Doc. 6-4 at 264-65, 1300, 1405, 1406-07. Further, the trial court instructed the jury on the burden of proof, specifically advising the jury that

Petitioner did not have to "prove anything." Id. at 1404. Jurors are presumed to follow a court's instructions on the law. See Brown, 255 F.3d at 1280; see also Almanzar, 634 F.3d at 1222.

Considering the record, the Court finds that the state's comment during closing argument did not render Petitioner's trial fundamentally unfair, or "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181. Thus, Petitioner fails to show deficient performance or resulting prejudice, which renders this claim insubstantial. Because this claim is not substantial, Martinez, assuming it applies, does not excuse Petitioner's procedural default. Petitioner has not otherwise shown cause for and prejudice from his procedural default or demonstrated that a fundamental miscarriage of justice will result if the Court does not consider this claim on the merits. As such, Ground Four is due to be denied.

Accordingly, it is

**ORDERED**:

1.     The Amended Petition (Doc. 3) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not

warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[8]

     **DONE AND ORDERED** at Jacksonville, Florida, this 15th day of September, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

JAX-3 9/2
c:
Counsel of Record
Lamar Anthony Simmons, #J58086

---

[8] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.